## COSTANZO TRANSP. CO. v. AMERICAN BARGE LINE CO., Inc.

### No. 81.

District Court, W. D. Pennsylvania.

Sept. 11, 1940.

Zeno Fritz, of Pittsburgh, Pa., and George A. Blackford, of Wheeling, W. Va., for libelant.

Alter, Wright & Barron and James Milholland, all of Pittsburgh, Pa., Waite, Schindel & Bayless, of Cincinnati, Ohio, and L. C. Hinslea, of Cleveland, Ohio, for respondent.

GIBSON, District Judge.

Under the admitted facts the one duty of the court is to determine what amount is properly awardable to the Libelant as salvage. The steamboat "Chickie", under charter to the respondent, while towing seven loaded and four unloaded barges of the libelant down the Ohio River, had a number of those barges break away from it and proceed to drift down the river. Thereupon its master caused a signal of distress to be made, and the steamboat "Costanzo", then owned by the libelant, proceeded to land two barges which it was towing upstream and went to the aid of the "Chickie", finally securing and safely mooring seven of the drifting barges. This service required two hours and forty minutes, and for it the libelant is entitled to claim a due award.

A general custom exists on the local rivers by which steamboats mutually assist each other in the case of accident, such as that of the instant case, without any claim of salvage for the service rendered; but the owner of the "Costanzo" was not bound to participate in that custom, praiseworthy though it undoubtedly is, and it is immaterial that the master of the "Chickie" called for assistance under the impression that it would be given him freely as only a matter of neighborly aid, and that the master and

crew of the "Costanzo" rendered such assistance in adherence to the custom and without thought of a future claim of salvage.

It is to be remembered, however, that the only active claimant for salvage is the owner of the "Costanzo", the Costanzo Transportation Company, and the court will consider the claim largely from the standpoint of the owner.

The crew of the "Costanzo" expended two hours and forty minutes in rendering the salvage service. If the ordinary towing charges of the steamboat be considered, the compensation for time lost would be small. The crew of the "Costanzo" reclaimed the drifting barges in a skillful manner, but with no more of risk to themselves or to their vessel, or but little more, than was incident to ordinary operations upon the river. The "Costanzo", valued upon trial by the president of the libelant at $40,000 at the date of the salvage, but sold a year later for $19,000, was not injured and was placed in slight peril. The barges were of very considerable value, as was the freight carried by them, but, accepting the testimony of the river-men who testified, were in no great ultimate danger. The master of the "Chickie" testified that he could have picked up the barges with his own steamboat, and would have done so had he thought that any claim for salvage would be made on behalf of the "Costanzo". His ability to do this was not denied by any of the witnesses who were engaged in the salvage.

From the foregoing discussion of the elements upon which the right to salvage is based it will be apparent that the salvage in the instant matter was not one of a high order calling for a large award. It involved practically nothing beyond the ordinary towing operation, and therefore comes within the class of salvage claims such as that in Neel v. Iron City Sand Company, 3 Cir., 149 F. 980, in which case the court said that the award ought not to be a large one.

The cost of operating the "Costanzo" was less than $8 per hour, and its ordinary towing charge was approximately $20 per hour. Under these facts and the absence of any considerable danger to it in its handling of the barges in the operation, the court is of opinion that the sum of $300 will sufficiently compensate the Costanzo Transportation Company for the use of its steamboat in the rescue of the drifting barges.

The libelant filed its libel on behalf of the crew of the "Costanzo", as well as on its own behalf. Of the crew, the master, N. D. Jones, and the pilot, W. B. Roush, on the witness stand, each stated that he had not authorized the filing of the libel on his behalf and that he did not desire to claim a salvage allowance for himself. This being so, no amount will be awarded to either of them. In addition to the master and pilot eight members of the crew are named in the libel as persons who assisted in the salvage services. The mate, Stanley Lysicki, will be awarded $10 for his services, and each of the seven other members of the crew named in the libel will be awarded $5 for his part in the operation.